**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| CHRISTOPHER A. RZEPCZYNSKI, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:20-CV-272-TLS |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

**OPINION AND ORDER**

The Plaintiff Christopher A. Rzepczynski seeks review of the final decision of the

Commissioner of the Social Security Administration denying his applications for disability

insurance benefits and supplemental security income. For the reasons set forth below, the Court

finds that substantial evidence supports the ALJ's decision and that there is no basis for remand.

**PROCEDURAL BACKGROUND**

On June 16, 2017, the Plaintiff filed applications for disability insurance benefits and

supplemental security income, alleging disability beginning on January 11, 2017. AR 10, ECF

No. 13. After the claims were denied initially and on reconsideration, the Plaintiff requested a

hearing, which was held before the ALJ on December 6, 2018. AR 10, 34. On February 20,

2019, the ALJ issued a written decision, finding the Plaintiff not disabled. AR 10–24. The

Appeals Council denied the Plaintiff's request for review. AR 1. Thus, the ALJ's decision is the

final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The

Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On March 27, 2020, the Plaintiff

filed his Complaint [ECF No. 1] in this Court, seeking reversal of the Commissioner's final

decision. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 19, 22, 23.

## THE ALJ'S DECISION

For purposes of disability insurance benefits and supplemental security income, a claimant is "disabled" if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] To be found disabled, a claimant must have a severe physical or mental impairment that prevents him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). An ALJ conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The first step is to determine whether the claimant is no longer engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i), (b). In this case, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since January 11, 2017, the alleged onset date. AR 12.

At step two, the ALJ determines whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii), (c). Here, the ALJ determined that the Plaintiff has the severe impairments of anxiety disorder, depression, intellectual disability, obesity, spine disorder, history of aortic aneurysm, and bilateral hearing loss. AR 12.

---

[1] For convenience, the Court cites the disability insurance benefits statutes and regulations, which are largely identical to those applicable to supplemental security income relevant to this case. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step three requires the ALJ to consider whether the claimant's impairment(s) "meets or equals one of [the] listings in appendix 1 to subpart P of part 404 of this chapter." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant's impairment(s), considered singly or in combination with other impairments, meets or equals a listed impairment, the claimant will be found disabled without considering age, education, and work experience. *Id*. § 404.1520(a)(4)(iii), (d). Here, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listing, having considered Listings 1.04, 2.10, 4.04, 12.04, 12.05, and 12.06. AR 13–16.

When a claimant's impairment(s) does not meet or equal a listing, the ALJ determines the claimant's "residual functional capacity" (RFC), which "is an administrative assessment of what work-related activities an individual can perform despite [the individual's] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1520(e). In this case, the ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is limited to occasionally climbing ramps and stairs, occasionally balancing, stooping, kneeling, crouching, and crawling; to never working at unprotected heights; never working around dangerous machinery with moving mechanical parts; and never operating a motor vehicle as part of his work-related duties. He is further limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas, and few changes in a routine work setting. He can never interact with the general public. He can work in proximity to other co-workers, but only with brief, incidental interaction with other co-workers and no tandem job tasks requiring cooperation with other co-workers to complete the task, and he can have occasional interaction with supervisors. He is limited to work environments that have no more than a moderate noise level.

AR 16.

The ALJ then moves to step four and determines whether the claimant can do his past relevant work in light of the RFC. 20 C.F.R. § 404.1520(a)(4)(iv), (f). In this case, the ALJ found

3

that the Plaintiff is unable to perform any past relevant work. AR 22. If the claimant is unable to

perform past relevant work, the ALJ considers at step five whether the claimant can "make an

adjustment to other work" given the RFC and the claimant's age, education, and work

experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Here, the ALJ found that the Plaintiff is not

disabled because the Plaintiff can perform jobs that exist in significant numbers in the national

economy of housekeeper cleaner, routing clerk, and garment sorter. AR 23–24. The claimant

bears the burden of proving steps one through four, whereas the burden at step five is on the

ALJ. *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001); *see also* 20 C.F.R. § 404.1512.

### STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the agency's final decision. 42

U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard

and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864

F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's

findings of fact and denial of disability benefits if they are supported by substantial evidence.

*Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v.

Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). Even if "reasonable minds could

differ" about the disability status of the claimant, the court must affirm the Commissioner's

decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)

(quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence,

resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that

of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (internal citations omitted). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

Seeking reversal and remand, the Plaintiff argues that the ALJ erred at step three in analyzing the Plaintiff's mental impairments under Listing 12.05B and that the RFC and the step five determination are founded upon legal error and are not supported by substantial evidence. For the following reasons, the Court affirms the ALJ's decision.

### A.    Step Three—Listing 12.05B

The Plaintiff first contends that the ALJ failed to properly evaluate his intellectual disability under Listing 12.05B. The Listing of Impairments "describes for each of the major body systems impairments that [the agency considers] to be severe enough to prevent an individual from doing *any* gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a) (emphasis added); *see Sullivan v. Zebley*, 493 U.S. 521,

529–30 (1990). If the claimant's impairment meets or equals a listed impairment and meets the

12-month duration requirement, the adjudicator will find the claimant disabled. 20 C.F.R.

§ 404.1520(a)(4)(iii), (d); *see also* 20 C.F.R. § 404.1505(a). A claimant "must show that his

impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458

F.3d 580, 583 (7th Cir. 2006). "In considering whether a claimant's condition meets or equals a

listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory

analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing *Brindisi ex*

*rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2002)).

Listing 12.05B for "intellectual disorder" requires the claimant to establish three

elements. 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.05B. First, the claimant must have

significantly subaverage general intellectual functioning, which can be shown by a full scale IQ

score of 70 or below. *Id*. § 12.05B(1). Second, the claimant must have "[s]ignificant deficits in

adaptive functioning *currently manifested* by extreme limitation of one, or marked limitation of

two, of the following areas of mental functioning: (a) understand, remember, or apply

information; (b) interact with others; (c) concentrate, persist, or maintain pace; or (d) adapt or

manage oneself." *Id*. § 12.05B(2) (emphasis added). Third, the evidence must demonstrate or

support the conclusion that the disorder began prior to the age of 22. *Id.* § 12.05B(3).

For the second element, the following rating scale is used to evaluate the degree of a

claimant's limitation in each of the four areas of mental functioning in a work setting:

    a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

    b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

    c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

    d.  Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

    e.  Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

*Id.* § 12.00F(2). The ALJ determines whether the claimant can use each of the areas of mental functioning in a work setting, considering the kind, degree, and frequency of difficulty the claimant would have; whether the claimant could function with additional help, structure, or supervision; and whether the claimant would require special conditions with regard to activities or other people. *Id*. § 12.00F(1).

Here, the ALJ found, and the parties do not dispute, that the Plaintiff meets the first element of significantly subaverage general intellectual functioning and the third element of an onset before the age of 22. *Id.* § 12.05B(1), (3). However, the ALJ determined that the Plaintiff does not satisfy the second element, finding that the Plaintiff has (a) a moderate limitation in understanding, remembering, or applying information; (b) a moderate limitation in interacting with others; (c) a mild limitation in concentration, persistence, or pace; and (d) no limitation in adapting or managing oneself. *Id.* § 12.05B(2); AR 14–15. The Plaintiff argues that the ALJ failed to properly consider the evidence of record in making each of those four determinations.

*1.    Understanding, Remembering, or Applying Information*

First, the ALJ found that the Plaintiff has moderate limitations in understanding, remembering, or applying information. AR 14. This area "refers to the abilities to learn, recall, and use information to perform work activities." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00E(1). The ALJ noted the Plaintiff's full-scale IQ score of 70. AR 14. However, the ALJ also noted that on mental status checks, the Plaintiff had "intact memory." *Id.* (citing AR 1270, 1366, 1370). Those records show that, on August 31, 2017, treating therapist Rebecca Reuter

reported that the Plaintiff had "intact remote and recent" memory on mental status exam. AR 1270. On March 13 and June 13, 2018, Dr. Munson similarly indicated that the Plaintiff had "intact remote and recent" memory on mental status exam. AR 1366, 1370.

The Plaintiff argues that the ALJ's reliance on mental status examination findings is not persuasive in light of formal memory testing. However, as argued by the Commissioner, three of the four cited testing records are from long before the relevant time period. *See* AR 506 (1985/1986), 712 (2007), 840–41 (2014). To meet the second element of Listing 12.05B, the significant deficits in adaptive functioning must be "currently manifested." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.05B(2). The Plaintiff offers no argument in reply as to how these records support current deficits greater than the moderate limitation found by the ALJ. Nevertheless, in the context of the RFC and assessing the Plaintiff's intellectual disability, the ALJ recognized the Plaintiff's history of special education classes. AR 17; *see Zellweger v. Saul*, 984 F.3d 1251, 1252, 1254 (7th Cir. 2021) (recognizing that the ALJ's discussion of the evidence under the RFC heading may support a step-three determination).

The fourth testing record, which is based on three evaluations in April and May 2017 by Daniel L. Schultz, Ph.D., documents the Plaintiff's scores on the WAIS-IV, but Dr. Schultz does not discuss the Plaintiff's memory or interpret the memory portion of that score in the narrative. *See* AR 1187, 1512. Moreover, Dr. Schultz gave a diagnosis of *mild* intellectual disability, adjustment disorder with depressed mood, and auditory functioning disorder and speech difficulties. AR 1513. The ALJ specifically considered this record for the Plaintiff's 2017 IQ score of 70 and noted that "[t]he examiner concluded the claimant's test result placed him in the mild range of intellectual disability." AR 17–18 (citing AR 1187). The Plaintiff offers no

explanation why this testing record supports more than the moderate limitation found by the ALJ.

The Plaintiff also argues that his Help at Home social worker, Jessi King, believed that he did not have the ability to understand, remember, and carry out job instructions. *See* AR 1420, 1483. However, the ALJ found Ms. King's opinion not persuasive on the basis that it is inconsistent with medical records and her own treating notes, *see* AR 21–22, and the Plaintiff does not argue that the ALJ erred in that assessment. *See* 20 C.F.R. § 404.1520c(b)(2) ("[T]he factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . to be.").[2]

Next, the Plaintiff argues that he and his wife reported his memory problems. The cited pages of the Adult Function Reports include statements that the Plaintiff has to be reminded of his appointments and that he needs to be told many times how to do one thing. *See* AR 407–08, 426–27. The ALJ recognized these reports as well as the similar testimony of the Plaintiff and his wife, AR 17, all of which appears to be consistent with a moderate limitation in this area.

Finally, the Plaintiff points to a June 2015 "Report of Training Progress" from his prior employer (Selected Furniture) for Vocational Rehabilitation Services. *See* AR 834. Under the heading "Difficulties," the boxes for "Learning subject matter" and "Speed" are checked. *Id.* However, the supervisor explains that the Plaintiff "just needs additional time to develop skills" when learning new jobs. *Id.* As noted by the Commissioner, the report overall was favorable as the Plaintiff's progress was rated as "average," the quality of his work was "good," and he was "cooperative" in training. *Id.* On a scale of "good, fair, or poor," the Plaintiff was rated "good" for communication, staying on task, problem solving, and following instructions and was rated

---

[2] Although an ALJ is not required to articulate how he considered evidence from nonmedical sources using the requirements set forth in § 404.1520c(a)–(c), *see* 20 C.F.R. § 404.1520c(d), the ALJ did so here.

"fair" for speed. *Id*. The employer answered "yes," when asked if the Plaintiff, as a trainee, has the talent, personality, educational, and other qualifications necessary to succeed in this kind of work. *Id*. Although this record predates the relevant time period, it appears to further support the ALJ's findings of no greater than a moderate limitation in the workplace context.

Later in the decision, the ALJ considered the Plaintiff's intellectual disability when reviewing the state agency psychological consultants' opinions. AR 21. The ALJ noted that, despite the Plaintiff's IQ of 70, his work history shows he was capable of working and he graduated high school. *Id.* The ALJ recognized that the Plaintiff cares for his daughters, drives himself to appointments, and performs household chores. *Id*. The ALJ noted that mental status checks showed that he was casually groomed, cooperative, and had intact memory and that his depression and anxiety improved with medication and therapy. *Id*. In the RFC discussion, the ALJ noted that, although the Plaintiff has mild intellectual disability, he has a consistent work history, graduated from high school, and has a valid driver's license. AR 22.

The Plaintiff has not offered evidence to show that the ALJ erred in finding that the Plaintiff has a moderate limitation in understanding, remembering, or applying information, and substantial evidence supports the finding.

2.     *Interacting with Others*

Second, the ALJ found that the Plaintiff has moderate limitations in interacting with others. AR 14. This area "refers to the abilities to relate to and work with supervisors, co-workers, and the public." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00E(2). The ALJ noted the Plaintiff's report that he has difficulty interacting with others and his wife's report that he has anger issues and difficulty being around people. AR 14. The ALJ noted that "mental status checks occasionally noted abnormal psychomotor activities, poor eye contact, and an anxious or

blunted affect." *Id*. (citing AR 1297, 1299, 1370). The ALJ contrasted those records with the fact that the Plaintiff was cooperative and that the Plaintiff's anxiety and depression had improved with medication. *Id.* (citing AR 1366, 1369). Finally, the ALJ noted reports that the Plaintiff was doing well maintaining conversations and initiating topics of conversation. *Id*. (citing AR 1333).

In response to the ALJ's reliance on the improvement of the Plaintiff's anxiety and depression with medication, the Plaintiff notes that the doctor commented in that same July 2018 note: "He is denying depression and insists his anxiety is improved, but is obviously ill at ease." AR 1366. Nevertheless, the ALJ accounted for the Plaintiff's ongoing social difficulties, despite his improvement, by finding a moderate limitation in social functioning, which appears to reflect the level of the Plaintiff's social discomfort. The Plaintiff does not explain how continuing to be ill at ease requires a greater than moderate level of limitation. In formulating the RFC, the ALJ explained that, "while the claimant alleges an inability to work, he left his last job because of scheduled heart surgery, not because of an inability to interact well with others." AR 22.

Moreover, the ALJ considered that specific record in the RFC determination, when the ALJ detailed the progression of the Plaintiff's treatment for his depression and anxiety from August 2017 through July 2018. *See* AR 18. First, the ALJ noted treatment records from 2017, which included findings in August 2017 of a guarded attitude, psychomotor retardation, a depressed and irritable mood, intact memory, and distracted attention/concentration and in November 2017 of anxious mood, blunted affect, fidgety psychomotor activity, attentive attitude, and poor eye contact. *Id.* (citing AR 1270, 1297, 1299). The ALJ also recognized that the psychiatrist added Buspar to the Plaintiff's medication regimen at that time. *Id*. (citing AR 1299, 1303). The ALJ then noted that, in 2018, the Plaintiff was participating in therapy and meeting with a behavioral therapist and that the March 2018 mental status examination found the Plaintiff

"casually dressed with good eye contact, cooperative, but reserved attitude, anxious affect, slowed psychomotor activity, intact memory, and fair insight." *Id*. (citing AR 1370). The ALJ explained that, in June 2018, the Plaintiff continued to deny depressive symptoms at a follow up appointment and reported that the Buspar was helping his anxiety. *Id.* (citing AR 1366). The ALJ then noted that in July 2018 the Plaintiff continued to report doing well and his mood appeared stable. *Id*. (citing AR 1362, 1506). When all the records are viewed together, the ALJ properly relied on the Plaintiff's improvement with treatment, even if he continued to have some symptoms.

Regarding the in-home recreational therapist's report that the Plaintiff was doing well maintaining conversations and initiating topics of conversations—the Plaintiff argues that this is not persuasive evidence of functional ability because the notation was a statement of functioning in the home with the therapist and not in the work context. However, the regulations require the ALJ to consider all a claimant's statements about his symptoms, as well as any descriptions medical sources or nonmedical sources provide about how the symptoms affect the claimant's activities of daily living and the ability to work. *See* 20 C.F.R. § 404.1529(a); *see also* 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00F(3)(b) ("Information about your daily functioning can help us understand whether your mental disorder limits one or more of these areas; and, if so, whether it also affects your ability to function in a work setting."). The therapist's other statements are consistent with the ALJ's citation and present a favorable picture of the Plaintiff's abilities:

> He displayed consistency throughout each session and did well maintaining conversation for the full session. [He] often openly discussed his projects he was currently working on completing, as he was constantly expressing his passion for woodworking throughout the week. He enjoyed displaying his creativity and resourcefulness to the therapist each session. He typically communicated at an

audible level, but occasionally needed a prompt to repeat himself louder if he was difficult to understand.

AR 1333. It was proper for the ALJ to consider these statements from the Plaintiff's therapist, and it was reasonable for the ALJ to find that the statements failed to support marked or extreme functional limitations. AR 14–15.

The Plaintiff also argues that the ALJ failed to consider the combined effect of the Plaintiff's intellectual disability, social anxiety, and difficulty with verbal communication. The ALJ noted that, in June 2017, the audiologist who examined the Plaintiff opined that "while the claimant would have some difficulty hearing with background noise, his hearing loss would not prevent him from gainful employment." AR 20. The ALJ discussed the record evidence of all three areas individually, AR 17–20, and then specially considered the Plaintiff's intellectual disability, social anxiety, and hearing loss in combination when formulating the RFC. AR 17–19, 22. The Plaintiff has not pointed to evidence to show more than a moderate limitation in social functioning, even when considering the impairments in combination.

Finally, the Plaintiff cites a "mound" of evidence dating back to 1982 that he describes as generally documenting the Plaintiff's difficulties interacting with others. *See* AR 125, 480, 835, 843, 1421. However, the Plaintiff neither offers an analysis of these records nor points to specific records to explain why this evidence supports greater than a moderate limitation in social functioning. Two of the records are from Ms. King; again, the ALJ found King's opinion not persuasive, and the Plaintiff has not challenged that finding. AR 125, 1421. The March 2015 letter from the Plaintiff's counselor acknowledges the Plaintiff's difficulties interacting with others but also indicates that the Plaintiff is working on dealing with his anxiety appropriately, was doing better at being social, and that medication was helping some with the anxiety. AR 835. The June 2014 psychological report predates the relevant period and also predates the

13

progress referenced in the March 2015 record. AR 843. The remaining record is from 1982, well before the time at issue on this appeal. *See* AR 480. The Commissioner argues that these records do not inform how the Plaintiff's impairment is currently manifested, and the Plaintiff offers no reply.

The Plaintiff has not shown that the ALJ erred in finding that the Plaintiff has a moderate limitation in interacting with others, and substantial evidence supports the finding.

3.      *Concentration, Persistence, or Pace*

The ALJ found that the Plaintiff has a mild limitation in concentration, persistence, or pace. AR 14. This area "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00E(3). The ALJ cited evidence from the relevant time period, including the Plaintiff's wife's testimony that the Plaintiff needs reminders to complete tasks and an examiner who noted in August 2017 that the Plaintiff has distracted attention/concentration. AR 14 (citing AR 1270). The ALJ contrasted those records with the statements from 2018 that the Plaintiff completed woodworking projects and focused to play games, such as Uno or Connect Four. *Id.* (citing AR 1392).

The Plaintiff argues that the ALJ erred by ignoring the contradictory evidence of the Plaintiff's ADHD diagnosis. However, as argued by the Commissioner, the ADHD diagnosis was from 2007, over 10 years before the relevant time period. *See* AR 709–13, 848–49. The ALJ did not err by not considering the ADHD diagnosis.

The Plaintiff then again argues that the "ALJ did not take into account the detrimental impact of [the Plaintiff's] lifelong struggles with the combination of mental impairments and hearing with expressive language." Pl. Br. 13, ECF No. 19. The cited records are special education case conference reports from December 1982 through February 1983, when the

14

Plaintiff was in kindergarten, *see* AR 482–501; hearing tests from 1986 through 2006, *see* AR 699–708; and the 2014 psychological report, *see* AR 848. In addition to the records being dated well before the relevant time period, the Plaintiff does not explain how the records show that the combination of his intellectual impairments and hearing impairments create greater than a mild limitation in concentration, persistence, or pace.

The Plaintiff next argues that the ALJ did not consider evidence showing more than mild deficits in pace. The Plaintiff again relies on the vocational rehabilitation Report of Training Progress from June 2015, which indicates that the Plaintiff has difficulties with "speed" in the work environment. AR 834. As detailed above, the supervisor explained that the Plaintiff "just needs additional time to develop skills" when learning new jobs. *Id.* Again, the record overall was favorable as the Plaintiff's progress was rated as "average" and the quality of his work was "good." *Id.* On a scale of "good, fair, or poor," the Plaintiff was rated "good" for communication, staying on task, problem solving, and following instructions and was rated "fair" for speed. *Id.* This record is consistent with the ALJ's assessment of a mild impairment in pace.

Then the Plaintiff cites what he describes as clinical indications of slow cognitive pace. The records from 1989, 2007, and 2014 predate the relevant time period, and the Plaintiff offers no argument as to how they demonstrate his intellectual disability as currently manifested. *See* AR 510, 711–12, 839–42. The March 13, 2018 treatment record from Dr. Munson lists "a bit slowed" for "psychomotor" on mental status exam. *See* AR 1370. However, the ALJ also cited earlier treatment records showing "abnormal psychomotor activity, poor eye contact, and an anxious or blunted affect," but then noted the improvement in his anxiety with medication in 2017 and 2018. AR 14 (citing 1297, 1299, 1370, 1366, 1369). In fact, the June 2018 record cited

by the ALJ finds "Psychomotor Normal" on mental status examination. AR 1366. These records are not inconsistent with the ALJ's determination of a "mild" limitation in pace.

Asserting that the ALJ should have found a "marked" limitation in concentration, persistence, or pace, the Plaintiff cites the psychometric testing results and observations of professionals from 2007 and 2014, which predate the relevant period. *See* AR 712–13, 762. The Plaintiff cites reports that he was "distracted" on mental status examination. *See* AR 1270, 1318. These reports do not support a finding of a "marked" limitation, which requires a showing of a "serious limitation." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00F(2)(d). The Plaintiff also notes that a prior ALJ found a "moderate" limitation in this area. AR 166. It is unclear how a prior administrative determination of a "moderate" limitation supports a finding of a greater "marked" limitation. The fact that the Plaintiff and his wife checked the box for difficulty with "concentration" on the Adult Function Report is not inconsistent with the ALJ's determination of a mild limitation, and the Plaintiff has not shown that a greater limitation is warranted. *See* AR 408, 427, 437. The Plaintiff is essentially asking the Court to reweigh the evidence, which is outside of this Court's review. *See L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) ("Our review is deferential; we will not reweigh the evidence or substitute our judgment for that of the ALJ.").

The Plaintiff next argues that the ALJ failed to consider the effect of his social phobia on his ability to maintain attendance and work in proximity to others without being distracted. In support, the Plaintiff cites his February 23, 2017 Individual Support Plan. Although the cited pages contain findings regarding the Plaintiff's social phobia, there is no specific connection between his social phobia and limitations in concentration, persistence, or pace. *See* AR 1157, 1173, 1177, 1345, 1348, 1395.

16

Lastly, the Plaintiff contends that the ALJ impermissibly relied on the Plaintiff's woodworking and playing games like Uno and Connect Four to find only a mild limitation in concentration, persistence, and pace. The Plaintiff once again cites the June 2015 Report of Training Progress to suggest that the Plaintiff was learning the woodworking job too slowly. Again, the reference to speed was with learning a new job, and the employer otherwise rated the Plaintiff's speed as fair. AR 834. The Plaintiff also cites a social worker's note from 2015 that the Plaintiff "probably could not deal well with full time employment." AR 835. However, that opinion conflicts with the Plaintiff's actual work history during that time period. He left his woodworking job in 2017 for heart surgery, not because of his intellectual disability, which the ALJ noted. *See* AR 22. Although playing simple card games by itself may not be sufficient evidence to support a finding of mild impairment, it is consistent with the evidence of record as discussed above.

The ALJ sufficiently identified the evidence of the Plaintiff's limitations in this area and contrasted them with his abilities. The Plaintiff has not offered evidence to show a marked or extreme limitation in concentration, persistence, or pace, and substantial evidence supports the decision.

4.      *Adapting or Managing Oneself*

The ALJ found that the Plaintiff has no limitation in the area of adapting or managing oneself. AR 14–15. This area "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00E(4). The ALJ relied on mental status reports that noted normal insight and judgment. AR 14 (citing AR 1366, 1370). The ALJ also noted that the Plaintiff was independent in personal care tasks, that he cared for his daughters while his wife worked, and that he performed yard work, vehicle

17

maintenance, and did the family's laundry. AR 15 (citing AR 1162). Finally, the ALJ noted that

the Plaintiff appeared with causal dress and appropriate hygiene. *Id.* (citing AR 1226, 1317).

First, the Plaintiff argues that the ALJ erred by relying on "mundane daily activities" to

establish the ability to function "independently, appropriately, effectively, and on a sustained

basis" in a work environment. Pl. Br. 15. The Plaintiff contends that the ALJ failed to explain

how the ability to do household chores and take care of school-aged children translate to the

work environment. However, in all the cases cited by the Plaintiff where the court found that

reliance on similar household activities and/or childcare did not translate to the work

environment, the claimant's impairment was severe pain; the mental functioning area of the

ability to adapt or manage oneself was not at issue. *See Gentle v. Barnhart*, 430 F.3d 865, 867

(7th Cir. 2005); *Roddy v. Astrue*, 705 F.3d 631, 638–39 (7th Cir. 2013); *Engstrand v. Colvin*, 788

F.3d 655, 661 (7th Cir. 2015); *Ramey v. Astrue*, 319 F. App'x 426, 430 (7th Cir. 2009);

*Daugherty v. Berryhill*, No. 1:18-CV-256, 2019 WL 2083033, at \*24–25 (N.D. Ind. May 13,

2019). The Plaintiff cites no cases where it was inappropriate to consider household activities

and/or childcare when considering the "adapting or managing oneself" area of mental

functioning. Moreover, as cited above, the regulations specifically direct the ALJ to consider the

four areas of mental functioning in daily activities at home and in the community to reflect on

how the claimant may be affected in a work setting. 20 C.F.R. Part 404, Subpart P, App'x 1,

§ 1200F(3)(b). And, this was not the only evidence relied on by the ALJ to find no limitation.

The Plaintiff then argues that the ALJ ignored evidence such as the Plaintiff's reliance

upon his wife for financial management and completion of paperwork, his intolerance of stress,

his tendency to self-isolate, his inability to follow oral instructions, and his low verbal

comprehension, all of which the Plaintiff contends shows a "greater degree of limitation." Pl. Br.

18. The Plaintiff misstates the ALJ's decision. The ALJ specifically recognized the Plaintiff's reliance on his wife, that the Plaintiff does not like being around people and self-isolates, his history of special education, his learning disability, and his difficulty hearing. AR 17. However, as discussed in detail above, the ALJ then considered the Plaintiff's limitations in the context of the Plaintiff's therapy and treatment history in 2017 and 2018. The ALJ reasonably found, based on the treatment records, that the Plaintiff's impairments did not result in marked or extreme limitations. AR 14–15. The Plaintiff has failed to identify evidence to show otherwise.

Accordingly, the ALJ's determination that the Plaintiff does not meet Listing 12.05B is supported by substantial evidence, and the Plaintiff has not shown an error requiring reversal.

**B.      Vocational Findings Related to the RFC and the Step Five Determination**

In this section of his brief, the Plaintiff challenges the ALJ's RFC determination and the ALJ's reliance on the vocational expert's testimony. Neither provides a basis for reversal of the ALJ's decision.

*1.      RFC Determination*

First, the Plaintiff argues that the ALJ's RFC determination does not include all of his credible limitations and does not adequately account for his inability to sustain the rigors of full-time employment. The residual functional capacity ("RFC") is a measure of what an individual can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1). The "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The relevant evidence of the individual's ability to do work-related activities includes medical history; medical signs and

laboratory findings; the effects of treatment; reports of daily activities; lay evidence; recorded observations; medical source statements; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. The determination of a claimant's RFC is a legal decision rather than a medical one. *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)).

The Plaintiff contends that the limitation in the RFC to "simple, routine tasks on a continuous basis" lacks the specificity necessary for the Plaintiff's limitations in understanding, remembering, or applying information; in interacting with others; and in concentration, persistence, or pace. However, the Plaintiff provides no explanation for why the RFC does not accommodate his limitations, and he does not acknowledge the ALJ's detailed explanation of the RFC finding. *See* AR 16–22. Moreover, the Plaintiff ignores the ALJ's reliance on the state agency psychological consultant's opinions to formulate the RFC. *See* AR 21. As discussed in the previous section, the ALJ also discussed the medical source statement of social worker Ms. King but found it unpersuasive—again without challenge by the Plaintiff. *See id.*

As for his moderate limitations in understanding, remembering, or applying information, the Plaintiff argues that the limitation in the RFC to performing "simple, routine tasks" lacks specificity and "omits critical functional limitations supported by the evidence." Pl. Br. 20. However, the only limitation he identifies as omitted is the 2007 ADHD diagnosis, which occurred long before the period at issue. Notably, the Plaintiff fails to acknowledge the additional limitations in the RFC to "simple work-related decisions," "no assembly line work or strictly enforced daily production quotas," and "few changes in a routine work setting." AR 16. The ALJ explained that all these limitations address the Plaintiff's IQ score and mental health

20

impairments. AR 22; *see Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (explaining

that, although specific words are not required, the RFC must describe the claimant's actual

limitations). The Plaintiff offers no analysis of these additional limitations.

As for his moderate limitation in interacting with others, the Plaintiff overlooks that the

ALJ limited him to never interacting with the general public; to working in proximity to co-

workers but only with brief, incidental interaction with them and no tandem job tasks requiring

cooperation with co-workers to complete the task; and to occasional interaction with supervisors.

AR 16. These limitations are tailored to address the Plaintiff's difficulties with social

interactions, problems with anger and tolerating stress, and difficulties understanding and

interpreting social context. To the extent the Plaintiff argues that his hearing impairment further

exacerbates his social difficulties, the RFC further limits the Plaintiff to a work environment that

has no more than a moderate noise level. The ALJ specifically articulated that he limited the

Plaintiff's social interactions "to account for his anxiety." AR 22. The Plaintiff does not argue

that these specific and significant limitations in the RFC do not adequately address his social

limitations. *See Winsted*, 923 F.3d at 477.

As for the mild limitation in concentration, persistence, or pace found, the evidence from

the Plaintiff's woodworking job shows that the Plaintiff is slow in learning a new task but was

nevertheless rated, on a scale of "good, fair, or poor," as "good" for communication, staying on

task, problem solving, and following instructions and was rated "fair" for speed. AR 834. Again,

the ALJ noted that the Plaintiff left that position because of his heart condition, not because of

his intellectual disability. AR 22. The RFC addresses the Plaintiff's limitations in this area by

limiting him to simple, routine tasks and also no strictly enforced daily production quotas. The

ALJ provided an evidence-based assessment of what the Plaintiff mentally could do in the

workplace and why the ALJ included the limitations in the RFC. *Id.*; *see Crump v. Saul*, 932
F.3d 567, 570 (7th Cir. 2019); *Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019)
(finding that a limitation to simple judgment specifically accounted for the claimant's
concentration difficulties). The Plaintiff has not argued how the limitation to "simple, routine
tasks with no assembly line work or strictly enforced daily production quotas, and few changes
in a routine work setting" does not account for his difficulties in concentration and pace.

The ALJ's RFC determination is supported by substantial evidence, and the Plaintiff has
not identified a basis for remand on this issue.

2.      *Vocational Expert Testimony*

The Plaintiff argues that the ALJ did not "meaningfully contemplate" whether a
significant number of jobs exist for a person with the Plaintiff's vocational profile. This
argument is based on the erroneous assertion that the vocational expert did not testify to a
representative number of jobs in the economy. In fact, at the December 6, 2018 hearing, the
vocational expert testified that nationally there are 48,000 housekeeping jobs, 57,000 routing
clerk jobs, and 19,000 garment sorter jobs. AR 60, 66. The ALJ included these numbers in the
written decision and found that the Plaintiff "is capable of making a successful adjustment to
other work that exists in *significant numbers* in the national economy." AR 24 (emphasis added).
The ALJ's decision is supported by the record.

The Plaintiff also argues that, if additional limitations were added to the RFC there would
be no jobs. The Plaintiff identifies the additional limitations as a need to alternate sitting and
standing; a limitation to occasional reaching, handling, and fingering, particularly with the right
dominant hand and arm; and limitations from the non-severe impairment of carpal tunnel. The
Plaintiff offers no specific argument to show how the evidence supports these physical

limitations. At step two, the ALJ found the Plaintiff's carpal tunnel to be nonsevere and fully discussed the medical evidence to conclude that the Plaintiff's carpal tunnel syndrome does not significantly limit his ability to perform work activity. "The ALJ is only required to incorporate into her hypotheticals those impairments and limitations that she accepts as credible." *Murphy v. Colvin*, 759 F.3d 811, 820 (7th Cir. 2014). The Court finds that the Plaintiff has not shown that the ALJ erred in relying on the vocational expert's testimony at step five.

## CONCLUSION

For the reasons stated above, the Court DENIES the relief sought in the Plaintiff's Brief [ECF No. 19] and AFFIRMS the decision of the Commissioner of the Social Security Administration.

SO ORDERED on June 16, 2022.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT